Good morning, Your Honor. Jason Carr, appearing on behalf of Petitioner Habeas, Petitioner and Appellant Joshlin. Habeas is full of intricacies and complications, but at this stage of the proceeding, we are down to relatively simple legal determinations. And that is because our argument is that the Nevada Supreme Court correctly found that the prosecutorial misconduct of the rebuttal argument, specifically in this case, did constitute misconduct of a constitutional nature. Yet the Nevada Supreme Court, and this is on ER 41, so I'm focusing on the Nevada Supreme Court's direct appeal decision, that they found constitutional error, but did not correctly apply the Chapman Standard. So our argument is twofold. A, that by not applying the Chapman Standard, that renders the Nevada Supreme Court opinion contrary to clearly established Supreme Court law. Constitutional law is articulated by the Supreme Court. The second point to be made regarding that observation is since the Nevada Supreme Court did not engage in the proper harmless error analysis, the harmless error analysis this Court should apply as fretch, and that should be applied on a de nobis standard. And that is our position here. The State has made an argument that there wasn't constitutional error in this case. That argument, I believe, can be dispatched fairly readily. The Nevada Supreme Court... Counsel? Counsel? Can you hear me all right? Yes, I can, Your Honor. Okay. My question for you is about prejudice. Regardless of our standard of review and assuming that there was a violation, your client was found hiding in a dumpster with a handgun that was linked to the shooting, and there was also other evidence. So in your view, what is the best argument for prejudice from any error that did occur? Your Honor, it's a good question, and it comes right to really what is the crux of the matter of this case. Was this error harmful to Mr. Joslin? Now, in the Navarro order, she goes through a pretty in-depth analysis, Navarro, which pertains to Matthews, of course, addressing the exact same closing argument. But she does a... And this is in extra for records beginning at page 1 to approximately 28. And she does a good job of explaining why this error was harmful regarding Matthews. But, of course, since the issue wasn't before her, she didn't deal with Joslin. The answer to the question is that this is a case of a lot of unknowns. And I would concede, as I'd have to, that the State has evidence that places my client at the scene of this shooting and even some evidence that attaches him to the firearm that was found in the dumpster in which he was found. So there is some evidence. So when we're looking at the Brecht Standard, we'll want to see whether or not the error had a substantial and injurious effect on the jury's verdict. And in that analysis, I would say, first, we have to look at the core constitutional rights. And what I'm submitting here is that in the Brecht Harmless Error Analysis, we have to look at both the state of the trial evidence in addition to the nature of the harm. And here we have constitutional error that goes directly to the presumption of innocence and also implicates racial, race-based discrimination and socioeconomic classifications. So we're talking about misconduct. And Darden v. Wainwright, the Supreme Court case, talks about how it has to be a constitutional error whenever we talk about misconduct that implicates core constitutional rights. So the first part of my answer is, this is serious misconduct and that has to be weighed. The second is that, as I said initially, this is a case of unknowns. There's a lot about this case that we just don't know. And when there's a lot of unknowns, as a defense attorney, that means doubt. Well, both sides conducted themselves improperly, right? Defense counsel jumped on the police officers for wearing their uniforms. And one of the witnesses, because she was just kind of a clerk or not the top investigator or chemist or whatever her title was. And then the prosecution jumped on your client. Well, there was cross-examination with the two officers. They were actually witnesses at trial. And defense attorney Singer, who's the defense attorney for Jocelyn and the other defense attorney to some extent, did ask the officers, like, well, you don't normally wear a uniform on the job. Isn't your job non-uniform? Why are you wearing it here today? And that was to go to show bias of the witness. That was improper, too, was it? I don't think it is, Your Honor. It's a pretty common defense tactic to do that. I'm not saying it's effective, but we do that a lot. And I'm not aware of that being improper. It goes to the bias of the witness. It wasn't improper, but the defense commenting on what the police were wearing kind of mitigates against the prejudicial effect, it seems to me, of the comments by the prosecutor on what the defendant was wearing. Well, it's an excellent question, because you're exactly right, that invited error analysis does not excuse misconduct. The prosecution never gets a license to engage in misconduct, regardless of what the defense attorney says. In the United States v. Young, the Supreme Court case on point says that. But it is relevant, as you just said, to the harmless error analysis. And I would submit here that questioning whether officers are trying to curry favor with the jury by wearing their uniform, which was—that argument is directly based on the cross-examination of the officer, so that evidence was directly in the record. That's pretty far afield from what the prosecutor did here, which is directly—if you look at the comments, I mean, they're pretty serious. Any court that's looked at this, they've all found this to be pretty serious error, except for maybe my district court judge. But what she's saying is—she says—she begins the argument by denuding the burden of proof, with the presumption of innocence. She says, all you've heard is that these defendants are innocent, innocent, innocent, innocent, innocent. She literally says it six times. How innocent do they look to you? Now, here's where the harmful error really comes in, in my opinion. And this Court's decision in Shuler, which the Nevada Supreme Court relied upon, and I rely upon in my brief, says this explicitly, is that there was an objection, and the objection was a proper one, and that the district court, instead of issuing a jury a curative instruction or sustaining the instruction, denies the objection. And that emboldens the prosecutor to double down on that misconduct. And you see that again if you look through the rebuttal argument, which is contained in the first volume of the excerpts of record, from 46 to 72. That's the prosecution's rebuttal argument. And you'll see this again and again. And I stress in my petition and in my reply to the district court and on appeal, the most severe instances of misconduct. But if you read that rebuttal, you'll see misconduct happen again and again. Burden shifting, vouching, objection after objection all over the place. This was raised on appeal to the Nevada Supreme Court. Remind me, what did the Nevada Supreme Court say? Their decision is quite terse. It's found on page 37 of the opinion, of the excerpt from record, excuse me, I'm sorry, 41. And 40 and 41, it's a one paragraph decision. The meat of it says, as to the prosecutor's argument, although the argument was improper, they say one of their cases and also this court's case, Shuler, we conclude that Jocelyn failed to demonstrate prejudice. That's the entirety of it. So Shuler, just to go back to this point, to the extent the state's trying to argue that Nevada Supreme Court never found constitutional error, they rely heavily on Shuler, that's the case they cite, with a C-cite, which means that's what they rely on most heavily as part of the proposition. That case clearly designates this misconduct as constitutional error and applies the Chapman Standard. So the Nevada Supreme Court was aware of it. So when the Nevada Supreme Court said there was no prejudice, we, why is it that we have to review the whole thing de novo rather than saying that it's... The Nevada Supreme Court's opinion is contrary to Chapman because they do not apply the harmless and unreasonable analysis. They put the burden on Jocelyn to prove prejudice. So that's contrary to Chapman. So the next step is, is the error harmless under Bresch? In my opinion, since the Nevada Supreme Court did not apply the right standard, that's a de novo review. So this Court is free to look at the entire rebuttal argument and decide whether or not the error is harmful or not. I have a minute and 17 left here, and we'll see what other questions you'd like to reserve it. Thank you. Good morning, Your Honors. Heidi Stern on behalf of the Respondents. The touchstone of due process in a case of alleged prosecutorial misconduct is the fairness of the trial. Pierre Jocelyn received a fair trial in this matter. In order for this Court to affirm the district court's finding, it really only needs to look to the actual prejudice standard that is sufficient, and that's what the district court did here. There was overwhelming evidence of Jocelyn's guilt. There was a direct link. He had a direct link to the crime. The gun he was holding was found to have fired ten shots at the scene of the crime. There was also continuous witness identification of Jocelyn as he ran from the car, the scene of the carjacking, to the dumpster where he was found. And he was found with gloves that had gunshot residue on them, as well as the gun linked to the crime. In addition, he met the general descriptions of the assailant given by all of the ID witnesses. Now, the victims, it is true, did not personally identify him, but he generally met their descriptions of the perpetrator of this crime. In addition, it's important to recognize that in the Matthews case, Jocelyn's co-defendant, that court explicitly recognized the overwhelming evidence against Jocelyn of his guilt. And you can find that at the record at 15 and at 8, where the ---- Sotomayor, evidence against Matthews was less. It was less, yes, because there was no direct link. Matthews was actually found several hours or a couple of hours later after the crime. He didn't have a weapon on him, either. He did not have the weapon on him. But the sawed-off shotgun was found to be the one that killed the murder victim. So ---- Where was that found? What's that? Where was that sawed-off shotgun found, or was it found? I don't recall, Your Honor. I'm sorry. So in contrast to this overwhelming evidence of guilt, the statements at issue that the prosecutor complained of were fairly isolated. They were put in context really about the evidence. The prosecutor was saying, look at the evidence. At the beginning, you presume everyone innocent. Now you've heard everything, all of the evidence against them. Now don't they look guilty? She does not explicitly mention their appearance, their race, or their socioeconomic status. And any error regarding the clothing that she references was an invited error, which mitigates any prejudice. So the State would submit that in this case, the jury would find Jocelyn guilty regardless of whether these alleged misconduct had occurred or not. What is your theory with respect to what we do with the Nevada Supreme Court's finding that there was no prejudice? Yes. My first argument regarding that would be you don't necessarily need to go there. You can affirm the district court, which applied the Brex standard, and that's enough for denial. Now, if this Court were to consider granting the petition, Jocelyn does bear the burden of showing that the Nevada Supreme Court's prejudice and harmless error ruling was contrary to Chapman. And this is not a case I'd like to make note of this. This is not a case like some of this Court's prior cases where the State court actually applied a lesser standard than required by Chapman. If you look at the State court case cited by the Nevada Supreme Court, it basically applies an actual prejudice Brex standard. It compares ways the evidence and the prejudice and determines, you know, it determines the prejudice that way. So yes. Counsel? I have a question. In your view, does the standard of review make a difference to the outcome, depending on whether we follow defense counsel's suggestion of Brex or your proposed standard of review? No, I don't think that it would make a difference in this case, mostly because of the overwhelming evidence of guilt and the relative minoreness of any alleged misconduct. I would also say in addition that the court, the trial court here, when the comments were made and objected to by Matthew's counsel, did say to the jury, well, this is argument, and later instructed the jury, of course, that they could not consider counsel's argument as evidence. So there was a curative instruction here as well. So back to you. The trial judge said this is argument in response to the objection? Yes. And then later in the jury instructions, and the district court relies on that below in its order. So in any case, in order for Joshlin to prevail on his Chapman argument about the Nevada Supreme Court, he would have to show that their finding of no prejudice was contrary to Chapman. It doesn't matter here that they didn't cite Chapman or they didn't explicitly state that they were applying the Chapman standard. It's whether their finding contradicts what Chapman requires. And it's our argument that it does not. And if the Court has further questions, I'm available. Otherwise, that's what I have. Thank you. Are there any further questions? There don't appear to be any. Thank you. Chapman requires the prosecution prove beyond a reasonable doubt that the error was harmless. The Nevada Supreme Court on page 41, you see, we conclude that Joshlin failed to demonstrate prejudice directly the opposite of the Chapman standard. There was not overwhelming evidence against Joshlin. That is a false statement. This record has anything but overwhelming evidence. There's no evidence in this record here of motive, of intent. There's no evidence of any meeting.  knew any of the victims. The facts of this case are very unusual, and it's a very strange prosecution where there's so many unknowns. I mean, to say that it's overwhelming. And in regard to Matthews, the district court in the Matthews case was granted a writ for Matthews based on this exact same misconduct, did make some offhand comment about how the evidence against Joshlin may have been stronger. But obviously, that's dicta, and it just clearly is not true. The state misstated the evidence when they said that these witnesses identified my client. It's clear that none of the witnesses saw Joshlin, saw his face, were able to identify him. They didn't have his right height dimensions. Nothing other than African-American. Very clear that none of the officers, nobody was able to identify him until after he was found in a dumpster, and he was not in their line of sight the entire time. Matthews, there was 28 rounds traced to the weapon Matthews was found with. Didn't the police officer identify him as the person who had fled from the crime scene? Yeah, but he admitted under cross he was never able to see his face. He lost track of him. He thought that he was being threatened. He fired three shots at him. All right. But I would just submit that the evidence against Matthews was quite strong, stronger than against my client. Thank you. Thank you. The case just argued is submitted for decision.
judges: Siler, Schroeder, Graber